Next case is 514-0038-WC, Jeff Edwards v. Workers' Compensation Commission, Wolverine, Virginia. Counsel, you may proceed. Good morning. My name pleases the Court, Mr. Murphy. My name is Dan Burbaugh. I represent the petitioner in this case, Jeff Edwards. In this case, the petitioner filed a 19-B petition for past medical benefits and prospective medical in the form of surgery. The arbitrator correctly found that the petitioner suffered an accident on September 21, 2009, but then denied benefits based on lack of timely notice and causation. This decision was later affirmed by both the Commission and the Circuit Court. As it is with most cases, the question here is whether the Commission's decision is against the manifest way of the evidence. It's against the manifest way of the evidence when an opposite result is clearly apparent. So the Commission, in adopting the arbitrator's decision, found the lack of credible evidence supporting timely notice to the employer within 45 days of the accident. I believe that is what the Commission found. So why was the Commission's decision erroneous? I think it was erroneous in that they relied on evidence and said that someone was credible when, in fact, they were not credible and the evidence showed that they were not credible. But wait a minute. You know the well-settled rule, and that's very well-settled. It's exclusively within the province of the Commission, is it not, to make credibility findings and determinations? I agree that it is their determination to make rulings on credibility. But when they say someone's credible, and then affirm an arbitrator's decision who says someone's credible, and base their opinion that someone's credible on evidence that is actually the opposite of the evidence that they say it is, then you can't really say they're credible if that's the case. Well, you better give us an example, because he likes to use the famous example of the medical opinion we hear all the time. Counsel will argue the doctor's opinion was inherently flawed and ridiculous. And as he says, unless the doctor said, I made my determination after consulting the entrails of chickens or looking at the great oracle, you are stuck with the opinion. So if the witness testifies to something that might strike you as odd and bizarre, and the Commission believes it, tell us what it was that was inherently incredible about the testimony. Well, of course, thankfully this isn't medical opinions. This basically comes down to the testimony of the petitioner and the testimony of the petitioner's supervisor, in my opinion. So tell us why the supervisor was incredible. Well, when you read the testimony itself, it actually looks better than what it sounded like. And when you actually read the testimony, I don't even know that you can actually call it testimony, to be honest. First, let me talk a little bit about what the petitioner's testimony was. He testified he fell from a ladder, struck his right shoulder. He testified that he went and told his supervisor about it the same day and then twice about a week later. This accident, by the way, was witnessed by a co-employee who also testified that he saw the accident happen and confirmed the same story. Now when we go to the supervisor, the supervisor is asked whether he was told about the accident. His testimony is vague and unsure at best. When he was asked about whether the petitioner reported a shoulder injury, his testimony was basically he couldn't recall. If you look at every question posed to him, the question is, do you recall? And he says, no, I don't recall. And then at one point he's asked about whether he heard about the petitioner's accident prior to March 2011, whenever he received the application for adjustment of claim. His response was, quote, not that I can recollect. I mean, no, I mean I'm trying to remember from back then. No, I don't recollect anything. He's asked later whether the petitioner reported the accident about a week after. And he says, quote, I can't remember. I mean, no, I can't remember. I mean, it's been three years ago. I don't know. I mean, I can honestly say I do not recollect talking to him about this. That's not testimony. That's not someone saying he never reported an injury. That's someone saying, I honestly don't remember. And I don't think when you look at that evidence, you can say that's credible. When you have that evidence and you have the evidence of the petitioner who testifies without question, he told his supervisor three times about the accident, I don't think you can say that the manifest way the evidence supports the commission's decision in this case. Which was, as to that point, what? The commission's decision was that there was no notice because the petitioner did not inform the supervisor. So you're saying that the claimant's, that testimony, sufficient to establish notice was given and there's no rebuttal to it. I am, yes. Because of those, I can't remember, I don't know. I think when you look at it that way, I think when you look at it, even if you were to say the petitioner's testimony is not credible, say you were to assume that, which I don't think you can, if you look at his testimony and then you look at the testimony of the petitioner's supervisor, which is not testimony, you weigh those together, you look at the fact that the legislator has said the issue of notice is... Is that the standard of comparison, though, as to credibility or is it like demeanor? I mean, you know, that's the problem with this idea of credibility determination. Do you make a comparison against some other fact or observation in comparison or do you just look at the person and say, they've got shifty eyes? I think it's a combination of both. I think you can actually, you can observe them at trial and the commission can look at what the arbiter looked at, but you can also look at the evidence and whether or not the evidence actually supports their testimony. And that's another thing I was actually going to point out, in that I don't think the evidence actually supports the supervisor's testimony. But there were some other things worth it. The supervisor also testified that, you know, I always fill out an accident report and I didn't fill out one here. Sure. And if he hadn't reported to me, I would have filled one out. Absolutely. You know, there's something more than just I don't remember. Correct, and that was what I was going to move to next. If you look at his testimony on that matter, actually, he says he's the one responsible for filling out accident reports. If he would have reported an accident, I would have filled out a report. But then if you look at his testimony about two pages later, he's not actually the one who filled out the accident report for his second injury. So there he contradicts himself in his own testimony. Well, let's go back to the claimant, though, because it's the claimant's burden. He had a second injury with his eye, right? Correct. And he filled out an accident report within two weeks after that? Correct. Did he ever fill out an accident report regarding the other injury part? He did not. Well, doesn't that bear on credibility? I do believe it bears on his credibility, but he testified at trial that when he went to go back to complete that accident report for the first accident, his employer said, it's been over 72 hours, you can't do one. But therein lies the problem, then. If he had that conversation, he still waited more than 72 hours in a second accident, didn't he? Sure. Doesn't that weigh against him, too? It does a little bit, but he also testified when he went to go back to complete the accident report from the first accident, that the first accident was an injury he was told he thought would heal. He was told by his doctors, and he testified, he was told he thought it would heal, and then he was told he couldn't do an accident report after 72 hours. He didn't even think anything of it. The second accident regarding the eye, he actually sought, like, active treatment for it right away, and he had, like, a swollen and puffy eye. But he didn't fill out the accident report until more than eight days after the accident. So I think with the arbitration committee saying, Hey, he's referring, he's explaining why he didn't do it the first time, because he had this conversation with the supervisor, who told him he only had 72 hours. Then a month later, he has another accident, and he waits eight days. If he actually had the conversation and believed the supervisor, he would have filled it out within 72 hours, correct? I don't know that. Logically. I don't know that he would have filled out the accident report, because at the second accident, he actually, he did the same thing he did with the first accident. He told the supervisor, who, at the same time, didn't complete an accident report like he said he usually does. For both of these accidents, the second and the first, he told the supervisor about the accident. And I'm not saying this because I'm suggesting that the claimant's testimony was incredible. I'm pointing out on the weighing of the credibility issues, you said that the employer or supervisor was not credible. There's problems with the credibility of your client, the claimant. And remember, the burden is always on the claimant to prove the elements. Okay? The employer doesn't have to disprove. The arbitrator found him invasive in his answers as to if he wondered why the accident report for the shoulder had never been filled out. Yeah. I'm not actually sure where that comes from in the arbitrator's decision, because if you look at the petitioner's testimony, when he's asked the question, why didn't you fill out an accident report for this first accident, I mean, it's not like he said, oh, I don't know, I can't remember, or anything like that. His testimony was very clear in that he was told by his doctors he thought it would heal, and when he went to go report it after he went to his doctor, he was told by his supervisor that it had been more than 72 hours and he couldn't complete an accident report. I don't believe that it was invasive at all. I mean, when you look at his answer to the question, it's pretty clear why he says he didn't complete an accident report for it. Well, let's assume for the sake of the arguendo, as it were, that you get past the no decision. What about the manifest weight? I think as far as the manifest weight goes, I think the problem with the arbitrator's decision, which was affirmed by the commission, is that the manifest weight in this evidence supports the finding of notice, because when you look at it... No, I mean on the causal connection. Oh, I'm sorry. On the causal connection. On the causal connection, I think, first off, the only medical evidence that's been submitted at trial was medical evidence that supports the causal connection. There was no IME done in this case. There's no medical evidence to combat the fact that Dr. Miller has said that the accident caused it related to the petitioner's condition. But it wasn't a problem again with your client saying, who's paying? I'm sorry? Who is paying? Paying a witness to the accident. Who is Mr. Payne? Oh, Mr. Payne was the witness to the accident. Correct. He testified that Clayman fell 2 feet. The other medical records indicate, one, he fell 7 feet. Somebody, another doctor, was told he fell 6 feet. So apparently the commission found Payne's testimony to be more credible than what he reported to his treating physicians. Isn't that in the mix as well? It is. I can see that's an issue on the 2 feet versus 6 feet versus 7 feet, but when you boil it all down, it comes down to the fact that this guy did suffer an accident, which was found by the arbitrator, and however far he fell, all the testimony says he fell from a ladder or landed on his right shoulder, which is what he told every one of the doctors. Okay, then what happens when he goes to see Dr. Hoffman 8 days later? He tells Hoffman's report makes no mention of the accident or any pain whatsoever in the Clayman shoulder or back. In fact, for each of the subsequent visits, he doesn't say anything about his back, his head, or his neck. Isn't that a little bit surprising? Surprising and, unfortunately, not great doctor's notes. Well, now we're going to blame the doctors. I'm not going to say it's the doctor's fault at all. I'll give you credit. You have an answer for everything.  You say, I hurt my shoulder, and it's hurt me a little bit, but it's not a huge problem, and the doctor doesn't note it because he doesn't think it's a huge thing, but then when you get to the point where it docked, my shoulder's still killing me, which is what the notes show in this case. I understand your point completely. We should take judicial notice of the fact that doctors are allowed to make an error in his notes. Doctors make a lot of errors in their notes, but you tell me what the reason for Dr. Hoffman making notice from March 7, 2011 was? I think that was the point, and I think the... Felony Greenpen has discussed it with me each visit since? I think that was the point where the petitioner got to the point where his shoulder was actually hurting a lot more than it was before, and I think Dr. Hoffman put it in the note because that was when it was a main issue at that point. Felony Greenpen last year had landed on the right shoulder and has been hurting ever since and not getting better. Dr. Hoffman has discussed it with me each visit ever since. Why would he put he has discussed it with me each visit ever since? How does that relate to his medical treatment, unless someone told him to put it in there? That I don't know. I think, getting back to the manifesto, I think when you look at the evidence as far as notice and causation goes, the fact that all the medical evidence in this case, it's undisputed. The only evidence is that there's a causal relation. I think you have to find that the Commission's decision is against manifesto evidence, and I would ask that the decision be reversed. Thank you. Thank you, counsel. We have time to reply. You may respond. I'm Scott Murphy, and quite frankly, you have made all of my points with your questions. With all due respect to Mr. Brumbaugh, I know he has an uphill battle here, and it's an issue of credibility, and if the Commission and arbitrator found the opposite way, I don't think I would get it reversed, because there's arguments on both sides of this case. So unless you guys, your honors, have any questions, I will ask that it be approved. Thank you. Thank you, counsel. Okay, this matter will be taken under advisement, and a written disposition shall issue. We have one more case.